## BALLOU v. COUNTY OF JASPER.

*(Circuit Court, S. D. Illinois. July 7, 1880.)*

1. MUNICIPAL BONDS — FUNDED BONDS — ACT OF THE LEGISLATURE OF ILLINOIS.—An act of the legislature of the state of Illinois authorized all municipal corporations to take up and cancel outstanding bonds and other evidences of indebtedness, issued for the benefit of a certain railroad, under a prior act of the legislature, and fund the same. *Held*, that where a funded bond was regularly issued, and performance of all the essential conditions alleged in the bond, payment could not be refused a *bona fide* holder upon the ground that the original bond was issued by the county supervisors, instead of the county court, contrary to the terms of the original act.

*Hay, Green & Little,* for plaintiff.

*Hallay & Wood,* for defendant.

DRUMMOND, C. J. The question in this case arises on the construction to be given to what is called the funding statute of this state, authorizing counties, cities, townships, school districts, and other municipal corporations to take up and cancel outstanding bonds and other evidences of indebtedness, and fund the same; in connection with the act of March 1, 1867, which authorized cities, towns, and counties to subscribe for stock to the Grayville & Mattoon Railroad Company.

No objection is made to the validity of the bonds which were issued in this case, as not having been in accordance

with the funding law, but it is claimed that there was a vice in the issue of the original bonds, for which the funding bonds were given, and therefore that the funded bonds were void, and the county is not liable.

The facts relied upon to show the invalidity of the original bonds are that the law of 1867 required that the bonds should have been issued by the direction and authority of the county court, and they were, in fact, issued under the authority and by the board of supervisors of the county, while the supreme court of this state has decided that what is called the curative act of April 9, 1869, which sought to remedy some of the defects which it was supposed had occurred in the issue of the bonds, is inoperative and in violation of the constitution, and therefore there was no legal authority upon which the original bonds could rest, and the funded bonds are invalid.

Now, if we concede that the original bonds were not issued in strict conformity with the statute, and that the curative act was inoperative, still the bonds were issued by another branch of the legal authority of the county of Jasper, the board of supervisors of the county, who had authority in many cases to act for the county. It is true, it is claimed they had not authority in this particular instance to issue the bonds, but that the county court alone had authority; and yet both bodies would act for the county, and would purport to represent the people of the county, and it is not denied but that there was a vote of the people of the county authorizing the issue of these bonds by the board of supervisors. Therefore, it may be said, I think, with a great deal of truth, although technically the original bonds were not issued by the proper authority, still they were bonds issued, in one sense, by the county, and which created a debt on the part of the county; and as money had been advanced to the county it would constitute an equitable claim against the county, notwithstanding the bonds might have been issued by the wrong tribunal. That being the state of the case, the question is whether it was not competent for the county, under the funding law, to recognize the validity of these bonds,

notwithstanding there might have been an irregularity, and notwithstanding they might have been issued, in point of fact, by the board of supervisors instead of by the county court.

The funding law declared that the bonds might be issued for any indebtedness which was binding, or which constituted a subsisting legal obligation against the county. It is to be observed that this funding law declared that there should be no funding bonds issued, except upon a vote of the people, and a vote was accordingly had, and these funded bonds were issued under that vote and by the proper authority. These facts are all alleged in the funded bond, and the question is whether, as against a *bona fide* holder, the county can go back of all this, and defend against this, or similar actions, on the ground that there was a vice in the original indebtedness; that is, in the source of the original indebtedness, in that the bonds were issued by the board of supervisors, instead of by the county court. We think that it cannot, but that it must be assumed, especially in view of all these recitals in the funded bonds, to the effect that their issue was under this law, and that the proper county authorities had determined that it was a binding obligation on the county for which these bonds were issued, they were valid, and that there must be an end of these contests and defences some time or other; and, having issued these bonds under these circumstances, the county of Jasper cannot contest their validity now, even admitting that it could do so if the suit were brought on the original bonds.